UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



Tashon Spurgeon,

        Plaintiff,

–v–

Warden Stephen Wettenstein, *et al.*,

        Defendants.

13-cv-8117 (AJN)

ORDER

ALISON J. NATHAN, District Judge:

    This is an action under 42 U.S.C. § 1983. Plaintiff, proceeding *pro se*, alleges that over a period of five and a half days in October 2013, Defendant correctional officers subjected him to unconstitutional conditions of confinement and deprived him of his property without due process. Defendants have moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). Because it is clear from the face of the Complaint that Plaintiff has failed to exhaust the administrative remedies available to him, as is required under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, Defendants' motion to dismiss is GRANTED.

    **I.**    **Background**

    For purposes of deciding the motion to dismiss, all plausible allegations in the Complaint are accepted as true.

    According to the allegations in the Complaint, Plaintiff was brought into intake at Otis Bantum Correctional Center on Rikers Island on the evening of October 16, 2013. Compl. ¶ 2(A)-(C). While he was there, Captains Adams and Moore, and Deputy Patterson, placed him in a cell with feces on the walls, sink, and toilet. Compl. ¶ 2(D). He was left in the same cell for 24 hours without water, food, his mental health medication, and was not permitted visitors or to make a phone call. *Id.* For the first four hours of that period he was left in handcuffs. *Id.* After

1

24 hours, he was moved to another cell under the "same conditions," where under the supervision of Captain Morales and Deputy Williams he continued to be denied food, water, medication, visitors, and use of a phone. *Id.* On October 18, Plaintiff was moved again, and placed under the supervision of Captain Pittman and Deputy Arby; from October 19 through 21, in the daytime his area was supervised by Captain Hurley and at night by Captain Reid, and Correctional Officer Mason was also on duty in the area. *Id.* During this time, Plaintiff was left on a bench without a bed or hot water, and continued to be denied his medication as well as use of a phone. *Id.* He states that Captain Hurley threw his personal property and pictures of his family in the trash, and denied him food and water. *Id.* Throughout the entire period, Plaintiff states he was rendered ill while being denied medical treatment, and subject to verbal abuse and emotional torture. Compl. ¶ 3.

Plaintiff alleges that he filed a grievance about the incident. Specifically, he states that he filed the grievance in the facility's law library by "put[ting] two in the grievance box here at O.B.C.C. [Otis Bantum Correctional Center]." Compl. ¶ 4(E). He states that the grievances contained all of the same factual allegations as he alleged in the Complaint, and that authorities at the facility did not respond to either grievance. Compl. ¶ 4(B)-(E).

Plaintiff's signature on the Complaint is dated October 28, 2013, Compl. at 7, and this case was docketed on November 13, 2013. Dkt. No. 1. Defendants filed a motion to dismiss on March 28, 2014. Dkt. No. 13. On May 19, 2014, after Plaintiff's time to file a memorandum in response to Defendants' motion had expired, Defendants requested that the Court consider the motion unopposed. Dkt. No. 18. However, Defendants also represented that Plaintiff may have moved facilities, and that they were undertaking to provide Plaintiff with copies of their motion papers at his new address in the New York penal system. *Id.* In light of the representation that Plaintiff may not have received Defendants' motion paper, the Court extended Plaintiff's time to file in opposition to June 20, 2014, and indicated that it would consider the motion fully submitted if Plaintiff did not file a response by that date. Dkt. No. 19. Having received no response or any communication from Plaintiff since the Magistrate Judge ensured that he was

2

notified of the pending motion to dismiss at a conference on March 31, 2014, the Court considers the motion fully submitted, and will proceed to consider the merits of Defendants' motion.

## II. Motion to Dismiss Legal Standard

In order to survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). When conducting this analysis, the Court must accept as true all well-pleaded facts and draw all reasonable inferences in favor of Plaintiff. *See Kassner v. 2nd Ave. Delicatessen Inc.,* 496 F.3d 229, 237 (2d Cir. 2007). However, a plaintiff must plead more than mere legal conclusions couched as factual allegations. *Iqbal,* 556 U.S. at 678.

When a complaint is filed *pro se*, as Plaintiff's is here, the Court will construe its allegations liberally to raise "the strongest arguments it suggests." *Walker v. Schult,* 717 F.3d 119, 124 (2d Cir. 2013) (alteration and quotation marks omitted); *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir. 2009) (requirement to liberally construed pleadings still applies after *Twombly*). Indeed, the Second Circuit has suggested that, even with the intervention of *Twombly* and *Iqbal*, a *pro se* complaint may be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Lopez v. Jet Blue Airways,* 662 F.3d 593, 596 (2d Cir. 2011) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)).

## III. Exhaustion

Under the PLRA, "No action shall be brought with respect to prison conditions under [42 U.S.C.] section 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of administrative remedies is mandatory for all suits brought by prisoners about their conditions of confinement, whether they involve particular incidents or institutional policies, *Hill v. Curcione,* 657 F.3d 116, 124 (2d Cir. 2011), and must be completed even if the type of relief sought in federal court is not available in the administrative process. *See Woodford v. Ngo,* 548 U.S. 81, 85 (2006) (citing *Booth v. Churner,* 532 U.S. 731, 734 (2001)). The Supreme Court has

held that exhaustion is an affirmative defense under the PLRA, and "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). Nevertheless, if it is clear from the face of the Complaint that the Plaintiff is not entitled to relief because he failed to exhaust administrative remedies, dismissal is appropriate. *Id.* at 215-16.

Here, the allegations in the Complaint demonstrate that Plaintiff did not exhaust the administrative process. Plaintiff alleges that he placed two grievance forms in the grievance and request box at Otis Bantum Correctional Center, which is the first step of New York's administrative procedure.[1] Although Plaintiff alleges that prison authorities did not respond to his grievance, New York's procedures also provide that an inmate may appeal when he does not receive a timely disposition of his grievance.[2] As *Woodford* makes clear, Plaintiff was obligated to comply with New York's grievance procedure on its own terms. *See Woodford*, 548 U.S. at 90; *see also Jones*, 549 U.S. at 218. Plaintiff has not alleged that he pursued the appeal available to him, and the timing of his Complaint demonstrates that the grievance procedure could not have run its course by the time he filed suit.

The Complaint in this action was signed on October 28, 2013, just one week after the events underlying the Complaint took place. New York's grievance procedures give officials five business days from the date the grievance was received from the box to respond,[3] and October 28, 2013 being Monday, it represented officials' final day to respond even if Plaintiff filed his grievance immediately. Thus, Plaintiff resorted to federal court before a response to his grievance from officials was required, and therefore before he could have complied with the

---

[1] *See* Inmate Grievance and Request Program ("IGRP"), City of New York Department of Correction (Sept. 10, 2012), at 12, *available at* http://www.nyc.gov/html/doc/downloads/pdf/Directive_3376_Inmate_Grievance_Request_Program.pdf (last visited March 26, 2015). The Court may take judicial notice of prison regulations such as the IGRP, and does so here. *See Christman v. Skinner*, 468 F.2d 723, 726 (2d Cir. 1972); *see also Hernandez v. N.Y.C. Dep't of Corr.*, No. 01-cv-10936 (KMW) (FM), 2003 WL 542116, at *4 n.2 (S.D.N.Y. Feb. 18, 2003) (taking judicial notice of New York's grievance procedures when undisputed).

[2] IGRP at 15.

[3] IGRP at 16.

terms of the appeals process. The Complaint must therefore be dismissed, not because Plaintiff has failed to *plead* exhaustion, but rather because his allegations affirmatively demonstrate that he did not exhaust the administrative procedures available to him.

The Second Circuit has explained that there are three circumstances where an inmate's failure to exhaust administrative remedies may be excused: if such remedies were not actually available to the plaintiff; if the defendants' own actions either waived the exhaustion defense or inhibited exhaustion; and if special circumstances justify a failure to exhaust. *See Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004). The Circuit Court has since questioned the continuing validity of the estoppel and special circumstances exceptions in light of the Supreme Court's decision *Woodford*, where it held that the PLRA requires "proper exhaustion" of all administrative remedies according to whatever rules the agency sets out. *See Amador v. Andrews*, 655 F.3d 89, 102 (2d Cir. 2011) (citing *Woodford*, 548 U.S. at 90). Nevertheless, the Second Circuit has never squarely decided in the continuing vitality of *Hemphill*'s three exceptions, and has continued to apply them in analyses even since the decision in *Woodford*. *See Messa v. Goord*, 652 F.3d 305, 309 (2d Cir. 2011).

Whether *Hemphill* survived *Woodford* is immaterial here, however, because exhaustion is not excused under any of *Hemphill*'s tests. The fact that Plaintiff initiated two grievances indicates that the procedure was available to him. *See Kasiem v. Switz*, 756 F. Supp. 2d 570, 577 (S.D.N.Y. 2010); *Harrison v. Goord*, No. 07-cv-1806 (HB), 2009 WL 1605770, at *6 (S.D.N.Y. June 9, 2009); *see also Winston v. Woodward*, No. 05-cv-3385 (RJS), 2008 WL 2263191, at *8 (S.D.N.Y. May 30, 2008). Nothing in the Complaint indicates that Defendants prevented or otherwise stood in the way of Plaintiff's grievance or his filing of an appeal; in fact, the Complaint itself demonstrates that Defendants did not stand in Plaintiff's way of doing so. Furthermore, Defendants have raised their exhaustion defense in their initial filing with the Court. Plaintiff has failed to oppose the motion to dismiss, and there is no indication that special circumstances existed that would excuse Plaintiff from complying with the exhaustion process.

**IV. Conclusion**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. Plaintiff's claims are dismissed without prejudice

This resolves Docket No. 13. The Clerk is requested to terminate the case.

SO ORDERED.

Dated: Mar. 26, 2015
New York, New York

_____
ALISON J. NATHAN
United States District Judge